**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
**---------------------------------------------------------------**

JACK D. KENT,

                             Petitioner,

        v.                                       No. 9:05-CV-0785
                                               (LEK/DRH)

JOSEPH T. SMITH, Superintendent,
Shawangunk Correctional Facility,

                            Respondent.

**---------------------------------------------------------------**

**APPEARANCES:**                         **OF COUNSEL:**

JACK D. KENT
Petitioner Pro Se
No. 95-A-4071
Shawangunk Correctional Facility
Post Office Box 700
Wallkill, New York 12589

HON. ANDREW M. CUOMO           LUKE MARTLAND, ESQ.
Attorney General for the State         ALYSON J. GILL, ESQ.
  of New York                       Assistant Attorneys General
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

      Petitioner pro se Jack D. Kent ("Kent") is currently an inmate in the custody of the

New York State Department of Correctional Services ("DOCS") at Shawangunk

Correctional Facility.  Kent was found guilty on April 14, 1995 of sodomy, rape, and sexual

abuse after a jury trial in Rensselaer County and is presently serving an aggregate

---

     [1] This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

indeterminate term of twenty-five to seventy-five years in prison.  Kent now seeks a writ of

habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) he was denied his

right to counsel, (2) his statement to police should have been suppressed, (3) the

prosecutor engaged in misconduct, (4) trial and appellate counsel were ineffective, (5) one

of the victims falsely reported being raped twelve years after the crime and the victims

recanted, and (6) the trial court abused its discretion when it denied his motion to vacate

his conviction without a hearing.   For the reasons which follow, it is recommended that the

petition be denied.

## I. Background

In July 1990, Kent sexually abused his two step-daughters, C.B. (then age 9) and

her sister, J.B. (then age 8).  In early July 1990, Kent called C.B. into his bedroom, took off

her shirt, and rubbed her breasts with his hand.  T. 4/11/95, 27-34.[2]  C.B. took off her

pants and Kent laid her on the bed, where he tried several times to put his penis in her

vagina.  T. 4/11/95, 34-36.  When C.B. told Kent he was hurting her, Kent rubbed his

penis around her vagina with his hands, and her vagina felt "slimy." T. 4/11/95, 35-37.

Kent told C.B. to take a shower and that his actions would not affect her in any way.  T.

4/11/95, 36.

In late July 1990, C.B. was laying on her back on Kent's bed watching television in

Kent's bedroom. T. 4/11/95, 37-38.  Kent came into the room, pulled down C.B.'s pants,

and told her to turn over onto her stomach.  T. 4/11/95, 38-39.  Kent tried to put his penis

---

[2] "T." followed by a number refers to the pages of the trial transcript included with
respondent's answer.  Docket No. 13 (filed under seal).

into C.B.'s anus but stopped when C.B. told him it hurt.  T. 4/11/95, 39.  Her anus felt "slimy."  T. 4/11/95, 39.

In the second half of July 1990, Kent took J.B. to the upstairs bathroom.  He told J.B. to pull down her pants and lay across the toilet on her stomach. T. 4/11/95, 90-93. Kent stood behind her, leaned over her and put something into her anus and moved it from side to side and up and down.  T. 4/11/95, 93-94, 111-112.  J.B. turned her head to try to see what Kent was doing, but he pushed her head down.  T/ 4/11/95, 94-95.  J.B.'s anus felt "slimy."  T. 4/11/95, 111.  Kent told her that if she would go to the bathroom, he would not have to do this.  T. 4/11/95, 95.  J.B. had experienced a problem with wetting her pants but had not done so that day.  T. 4/11/95, 95, 101.

In March 1994, Child Protective Services filed an Article 10 action in Family Court in which Kent was accused of child abuse.  Attorney Charles Wilcox was appointed to represent Kent on April 1, 1994 on the family court action.  H. 3/30/95, 73.[3]

In July 1994, Sgt. Stephen Weber, a thirteen-year veteran of the Troy Police Department and the officer in charge of the juvenile unit, was contacted by a Child Protective Services worker, who asked him to interview C.B. and J.B.  Weber interviewed the girls on August 1, 1994.  T. 4/12/95, 59-61.  On August 2, 1995, Weber interviewed Kent.  T. 4/12/95, 61.  Kent admitted in a written statement that he sexually abused C.B. and J.B.  T. 4/12/95, 81-82.

Kent was arrested and indicted for sodomy, rape, and sexual abuse.  After a jury trial, Kent was convicted of all counts and was sentenced as indicated above.  T. 4/14/95,

---

[3] "H." followed by a number refers to the pages of the transcript of the suppression hearing included with respondent's answer.  Docket No. 13.

25-33; ST. 5/2/95, 6-8.[4]   On June 5, 1997, the Appellate Division unanimously affirmed the conviction and sentence.  People v. Kent, 658 N.Y.S.2d 530, 531-32 (3d Dep't 1997);. see Docket No. 13 at Ex. 3c. Leave to appeal to the New York Court of Appeals was denied on October 31, 1997, and reconsideration was denied on December 22, 1997. People v. Kent, 688 N.E.2d 1391 (N.Y. 1997), reconsideration denied, 691 N.E.2d 645 (N.Y. 1997); see Docket No. 13 at Ex. 3d-e.

Kent then filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law ("CPL") § 440.10 on or about December 28, 1998.  See Docket No. 13, Ex. 3f.  Counsel was appointed to represent Kent and on July 26, 2004, filed an amended motion to vacate Kent's conviction.  See Docket No. 13, Ex. 3g.  Both motions were denied on March 3, 2005. See Docket No. 13, Ex. 3f-j.  An application for permission to appeal from the denial of the motion was denied on March 30, 2005.  See Docket 13, Ex. 3k-l.  This action followed.

## II. Discussion

## A. Exhaustion

As a threshold matter, respondent contends that Kent failed to exhaust two claims - that appellate counsel was ineffective and that the trial court abused its discretion and applied incorrect legal precedent when it denied his CPL 440.10 motion.  See Respondent's Mem. of Law (Docket No. 13) at 22-24. An application for a writ of habeas corpus may not be granted until the prisoner has exhausted all remedies available in state

---

[4] "ST." followed by a number refers to the pages of the transcript of Kelly's sentencing included with respondent's answer.  Docket No. 31, Ex. 4.

court unless there is an "absence of available state corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b).  To satisfy the exhaustion requirement, a petitioner must do so both procedurally and substantively.  Procedural exhaustion requires that a petitioner raise all claims in state court prior to raising them in the habeas corpus petition. Substantive exhaustion requires that a petitioner "fairly present" any constitutional claims to the state courts.  Dorsey v. Kelly, 112 F.3d 50, 52 (2d Cir. 1997) (quoting Picard v. Connor, 404 U.S. 270, 275 (1971)).  A claim is deemed exhausted when no real avenue remains by which it could be raised.  See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994).

Kent moved to vacate his conviction pursuant to CPL 440.10, which was denied. See Docket 13, Ex. 3f-j. Permission to appeal from the denial of the motion to vacate his conviction was denied.  See Docket 13, Ex. 3l.  No remaining avenue exists in which Kent could challenge the state court's application of legal precedent when denying his CPL 440.10 motion.  Therefore, that claim is deemed exhausted.

Kent's claim that appellate counsel was ineffective, however, is unexhausted.  Kent raised this claim in his motion to vacate his conviction, but the claim was denied without a hearing.  The state court noted that any claim that appellate counsel was ineffective must be addressed by the appellate court in which the appeal was taken. See Docket No. 13, Ex. 3j.  Under New York law, there is a specific procedure, a writ of error coram nobis petition, for raising a claim that appellate counsel was ineffective.  People v. Bachert, 69 N.Y.2d 593, 598-99 (1987). See Hust v. Costello, 329 F. Supp. 2d 377, 379 (E.D.N.Y. 2004); Jackson v. Moscicki, No. 99 Civ. 2427 & 9746, 2000 WL 511642, at *9 (S.D.N.Y. Apr. 27, 2000).  The coram nobis petition is the only way to exhaust a claim that appellate

5

counsel was ineffective for federal habeas purposes.  Garcia v. Scully, 907 F. Supp. 700, 706-07 (S.D.N.Y. 1995).  Kent failed to raise his ineffective assistance of appellate counsel claim through a writ of error coram nobis to the Appellate Division and, because there is no time limit for filing a writ of error coram nobis in state court, that procedure remains available as a state remedy.  Id. This claim is therefore unexhausted.

A court may, in its discretion, review and deny on the merits any unexhausted claims if the claims are "plainly meritless" (Rhines v. Weber, 544 U.S. 269, 277 (2005)), or "patently frivolous."  Wheeler v. Phillips, No. 05-CV-4399, 2006 WL 2357973, at *5 (E.D.N.Y. Aug. 15, 2006); McFadden v. Senkowski, 421 F. Supp. 2d 619, 621 (W.D.N.Y. 2006). Here, Kent presents no cause for his failure to raise the unexhausted claim in a state coram nobis petition.  Kent's claim fails, however, on the merits and, accordingly, the Court will address it.  28 U.S.C. § 2254(b)(2).

### B.  Standard of Review

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, laws or treaties of the United States.  28 U.S.C. § 2241.  Kent may obtain habeas relief by showing that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1); Campbell v. Burgess, 367 F. Supp. 2d 376, 380 (W.D.N.Y. 2004).  "By 'contrary to,' the state court decision may be either contrary to Supreme Court precedent on a question of law or the state court decision is opposite to a relevant Supreme Court case with 'materially indistinguishable' facts." Johnson v. West, No. 9:04-CV-751, 2007 WL 952058 at *2 (N.D.N.Y. Mar. 29, 2007),

6

(quoting <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06 (2000)).  A state court unreasonably applies federal law when the state court correctly identifies the governing legal rule in a particular case but applies the rule to the facts in an "objectively unreasonable" manner. <u>Johnson v. West</u>, 2007 WL 952058 at *2 (<u>quoting Lockyer v. Andrade</u>, 538 U.S. 63, 75 (2003)).   Relief does not lie for errors of state law.   <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>DiGuglielmo v. Smith</u>, 366 F.3d 130, 136-37 (2d Cir. 2004).   The state court's determination of a factual issue is presumed to be correct and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.   28 U.S.C. § 2254(e)(1).

## C. Right to Counsel

Kent contends that habeas relief should be granted because his right to counsel had "indelibly attached" by virtue of the assignment of counsel in the Family Court action, preventing him from waiving counsel without counsel present when he was interviewed by police.   Pet. at ¶ 12; Attach. at ¶¶ 1-24.   Kent also claims that his statement was the product of coercion and express and implied threats, and that Sgt. Weber wrote the statement and forced Kent to sign it.   <u>Id</u>.   Respondent argues that these claims are without merit.

### 1.  Sixth Amendment

Kent raises his claims that his right to "appointed counsel" was violated under the Fifth Amendment.   <u>See</u> Pet. at ¶ 12A; Attach. at ¶ 1.   This claim is based in part on the New

York State Constitution, but also on the right to counsel in criminal proceedings under the Sixth Amendment, rather than a violation of due process under the Fifth Amendment.

Under New York State law, "an 'indelible' right to counsel arises from the provision of the state's Constitution that guarantees due process of law, the right to effective assistance of counsel, and the privilege against compulsory self-incrimination." Hibbert v. Poole, 415 F. Supp. 2d 225, 233 (W.D.N.Y. 2006) (citing People v. Grice, 100 N.Y.2d 318, 320 (2003); People v. Bing, 76 N.Y.2d 331, 338-339 (1990).   The right is deemed "indelible" because once it "attaches," interrogation is prohibited unless the right is waived in the presence of counsel. People v. Grice, 100 N.Y.2d at 320-21. The right attaches once formal criminal proceedings have been commenced against an accused, but may also attach sooner if the accused requests an attorney or an attorney actually appears or communicates to police that he or she represents the accused. People v. Grice, 100 N.Y.2d at 322.  New York law is clear that the prohibition against questioning a suspect about an unrelated crime in the absence of his attorney extends only to a defendant who is in custody for a crime for which he has counsel.  See People v. Burdo, 91 N.Y.2d 146 (1997); People v. Stewart, 88 N.Y.2d 496 (1996); People v. Bing, 76 N.Y.2d 331 (1990).

Under federal law, the Sixth Amendment applies to criminal prosecutions and guarantees that those accused "shall enjoy the right . . . to have the Assistance of counsel for his defense."  U.S. Const. amend. VI.  The Sixth Amendment right to counsel is offense-specific and does not attach until formal criminal proceedings are initiated.  Texas v. Cobb, 532 U.S. 162, 167-68 (2001); McNeil v. Wisconsin, 501 U.S. 171, 175-76 (1991) ("Incriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses.").   The

8

police may question a suspect with regard to any matter unrelated to the matter for which the Sixth Amendment right to counsel has attached. Campbell v. Burgess, 367 F. Supp. 2d 376, 381 (W.D.N.Y. 2004). The test for determining whether the matters are related is "whether each offense requires proof of a fact that the other does not." Texas v. Cobb, 532 U.S. at 173 (quoting Blockburger v. United States, 284 U.S. 299 (1932), and finding that the meaning of "offense" is the same in double jeopardy and right to counsel contexts).

The Appellate Division found that although the family court action and the criminal action arose from the same "matrix," the two proceedings were unrelated because the purpose of the family court action was to protect the children, and the purpose of the criminal action was to secure a conviction. See Docket No. 13 at Ex. 3c.; People v. Kent, 240 A.D.2d 772, 773 (3d Dep't 1997). The credited testimony presented at the suppression hearing established that there were no criminal charges pending against Kent, no arrest warrant was pending, and Kent was not under arrest when he was interviewed by Sgt. Weber. H. 132. The only matter pending was the Family Court action. H. 137-139. Under New York law, a "child abuse or neglect proceeding under Article 10 of the Family Court Act is a civil proceeding for the protection of the child alleged to be abused or neglected." People v. Smith, 62 N.Y.2d 306, 309 (1984). In contrast, the focus of a criminal action is to punish the parent. Id. at 339, 476 N.Y.S.2d at 798. The trial court found that although Kent had an attorney in the civil family court action, the police were not aware of that fact. H. 138. It also found that the police were entitled to rely upon Kent's statement that he did not have an attorney, and did not want one. H. 141-142. Accordingly, the Sixth Amendment right to counsel would not have been triggered by the

9

fact that Kent was represented by counsel in a civil family court proceeding, particularly where the police had no knowledge of that representation.

The Appellate Division also found that there were "considerable factual dissimilarities between the allegations in the Family Court petition and those set forth in the indictment" and, accordingly, Kent was competent to waive his right to counsel in the absence of counsel.  See Docket No. 13, Ex. 3c.  Kent was indicted for sodomy, rape, and sexual abuse based upon incidents that occurred during July 1990.  See Docket No. 13, Ex. 3a.  In the Family Court action, J.B. accused Kent of touching her in a sexual manner while cleaning her after she wet her pants.  This conduct was alleged in the Family Court action to have taken place approximately two years before the action was filed, which would have been in March or April, 1992. H. 138.  C.B. accused Kent of touching her breasts with his hands and mouth and engaging in sexual intercourse at least two times. H. 77, 138.  There was no specific time frame associated with those allegations, and the petition alleged the conduct began when C.B. was six years old and concluded when she was approximately thirteen.  H. 138.  C.B. also alleged that Kent hit and pushed her.  H. 89.  There were no allegations of sodomy in the Family Court action.  H. 139.  The Appellate Division's rejection of this claim on the ground that the Family Court action and the criminal action were unrelated was not contrary to, or an unreasonable interpretation of, clearly established federal law.  See Texas v. Cobb, 532 U.S. at 173.   Therefore, the petition on this ground should be denied on the merits.

## 2.  Voluntariness of Kent's Statement

Kent also contends that his statement was involuntary because he was not given

10

his Miranda warnings[5] and the statement was the product of coercion and threats.  Pet. at

¶ 12; Attach. at ¶¶ 1-15, 29; Traverse (Docket No. 18) at 3.  Respondent argues that this

claim is without merit.

On habeas review, whether a statement was voluntary is a legal question that

requires independent federal determination "based on the totality of the circumstances

surrounding the confession." Nelson v. Walker, 121 F.3d 828, 833 (2d Cir.1997). The

review includes a determination of whether the waiver of Miranda rights was valid. The

petitioner bears the burden of establishing that his rights were violated.  Whitaker v.

Meachum, 123 F.3d 714, 716 (2d Cir.1997).  The inquiry into the circumstances

surrounding the confession, including the length and circumstances of the interrogation

and a defendant's prior experience with the legal system, is "purely factual, and the state

court's answer to it is afforded a presumption of correctness" under 28 U.S.C. §

2254(e)(1).  Holland v. Donnelly, 216 F. Supp.2d 227, 231 (S.D.N.Y. 2002), aff'd, 324 F.3d

99 (2d Cir. 2003).  See Thompson v. Keohane, 516 U.S. 99, 112 (1995); Tankleff v.

Senkowski, 135 F.3d 235, 243 (2d Cir.1998); Dallio v. Spitzer, 170 F. Supp. 2d 327, 338

(E.D.N.Y. 2001), aff'd, 343 F.3d 553 (2d. Cir. 2003).  When determining whether a

statement was voluntary, state courts frequently must resolve conflicts in the testimony of

police and defendants.  In these circumstances, "the law is clear that state-court findings

on such matters are conclusive on the habeas court if fairly supported in the record."

Tibbs v. Greiner, No. 01-Civ-4319, 2003 WL 1878075, at *9 (S.D.N.Y. Apr. 16, 2003).

Kent bears the burden of overcoming the presumption of correctness by showing, by clear

---

[5]See Miranda v. Arizona, 384 U.S. 436 (1966).

and convincing evidence, that the state court was wrong.  Id.

Here, Kent has not met that burden.  The state court heard the testimony of Sgt. Weber, Kent, Lennon, and Wilcox, Kent's Family Court attorney.  It gave "full credence" to the testimony of Sgt. Weber.  H. 131.  The court also gave "no credence to the testimony of Pamela Lennon and Jack Kent."  H. 131.  The court found that Weber did not "threaten or intimidate" Kent.  H. 135.  It also found that Kent was an "educated individual, has a high school education, college and military experience and [is] aware of criminal proceedings since he has prior arrests and was placed on probation previously."  H. 137. It ruled that Kent was "advised thoroughly and completely of his Miranda rights" and that Kent made a "knowing, intelligent, and voluntary waiver of his Miranda rights before giving any statements to the police."  H. 140.  The Appellate Division affirmed.  See Docket No. 13, Ex. 3c.  Since the state court resolved issues of credibility against Kent, and its findings are fairly supported in the record, the state court's findings are conclusive. Moreover, Kent fails to allege, and there is no evidence from the record, that the state court's or Appellate Division's decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001).

Kent now claims, as he did at the suppression hearing, at trial, and in his motion to vacate his conviction, that Sgt. Weber lied.  Specifically, Kent first claims that he was not home when Weber came to his home on August 2, 1994.  In support of that claim, he has attached affidavits from Joan Hover, Amanda Hover, and Pamela (Lennon) Razzano.  See Attach. at Ex. A, B, E.; Traverse at 2-3.  Razzano affirmed that Kent was at Hover's home when Weber arrived and that she called the Hover residence to tell Kent to come home.

12

Razzano and Joan Hover claim that Kent told Razzano over the telephone to get his attorney's card out of the desk and he would call the attorney when he arrived home.  Exs. A, E.  Kent also attaches an alleged transcription of the telephone call that was purportedly taped.  Ex. C.  Razzano claims that she did not remember the tape until she found it in May 1995 while moving.  Ex. E.  Although Amanda Hover remembered the telephone call, she did not hear the conversation.  Ex. B.  Kent claims that this constitutes proof that Weber lied at the hearing and at trial, and is proof that he intended to call his attorney and that he told Weber he had an attorney.  Attach. at ¶¶ 1-9.

Razzano was a witness at the suppression hearing.  Her affidavit differs from her hearing testimony.  For example, Razzano testified that she did not speak directly to Kent when she called him at the Hover residence, and that Joan Hover told Kent to come home.  H. 47.  The state court found Razzano's testimony to be incredible.  In any event, even if these affidavits are accepted as true that Kent intended to contact his attorney this does not mean that Weber did not give Kent his Miranda warnings, that Kent's statement was involuntary, or that Kent asked for an attorney.  The state court ruled, when denying this claim in Kent's motion to vacate his conviction, that, at best, this evidence related to the credibility of the witnesses and did not relate directly to the issue of whether the statement was voluntary.  See Docket No. 13, Ex. 3j.  Kent has not alleged, and the record does not show, that this decision was contrary to or an unreasonable application of Federal law.

Kent also makes several allegations that Sgt. Weber was allegedly demoted and that Weber convinced Officer Haskins to lie about witnessing Kent read his statement aloud and sign it.  See Attach. at ¶¶ 10, 16-22, Ex. F.  On cross-examination, Officer

13

Haskins testified that he spoke with Weber in the hallway prior to testifying, but that they did not discuss his testimony.  T. 218.  The state court considered these arguments when it denied Kent's motion to vacate his conviction.  See Docket No. 13, Ex. 3f, j.  It found that these allegations, if true, related to the credibility of the witnesses at trial but that these allegations "present no new evidence that go directly to the facts presented in defendant's statement to the police, nor do they go directly to the issue of whether the statements were coerced by the police from defendant."  Id. Ex. 3j.  Once again, Kent has not alleged, and the record does not show, that this decision was contrary to or an unreasonable application of Federal law.

The petition on this ground should be denied.

## D. Prosecutorial Misconduct

Kent contends that the prosecutor, "through a common plan or scheme," hid facts from the jury and coached witnesses.  Pet. at ¶ 12C.  Specifically, Kent claims that the prosecutor knew that he had counsel in the Family Court action, and knew that Sgt. Weber was aware that he had counsel, but permitted Sgt. Weber to commit perjury.  Attach. at ¶¶ 25-28.  Kent contends that the prosecutor knew that C.B. and J.B. could not have attended camp in July 1990 because records available at the Seton Health Center in Troy did not show that the girls had physical examinations and that the prosecutor let C.B. and J.B. testify falsely and used these alleged lies to show that Kent was not being truthful.  Attach. at ¶¶ 35-37.  Finally, Kent contends that the prosecutor coached Jane Szary in her testimony.  Attach. at ¶¶ 41-46.

14

### 1.  Procedural Bar

Kent's claims of prosecutorial misconduct  are procedurally barred.[6]  Kent did not

claim on direct appeal that the prosecutor engaged in misconduct but did raise the claim in

his motion to vacate his conviction.  See Docket No. 13, Exs. 3a, 3f.  The state court

denied the claim under CPL 440.10(2)(c) on the ground that although sufficient facts

appeared on the record, Kent unjustifiably failed to raise the claim on direct appeal.  See

Docket No. 13, Ex. 3j.  The denial of a claim under Criminal Procedure Law 440.10(2)(c)

rests upon an independent and adequate state ground and federal review of the claim is

barred.  Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993); Morales v. Sabourin,

No. 00 Civ. 8773, 2002 WL 32375006, at *12 (S.D.N.Y. Apr. 30, 2002).  This Court may

review the procedurally barred claim only if Kent demonstrates cause for the default and

resulting prejudice, or that the failure of the federal court to review the claim will result in a

"fundamental miscarriage of justice" -- i.e., that the petitioner is innocent.  Calderon v.

Thompson, 523 U.S. 538, 559 (1998); Coleman v. United States, 501 U.S. 722, 748-750

(1991).

Kent argues that this claim was not raised on direct appeal because appellate

counsel was ineffective.  See Supplemental Pet. (Docket No. 5) at ¶ 134; Traverse at 18-

22.  The ineffectiveness of counsel for not raising or preserving a claim in state court will

be sufficient to show cause for a procedural default only when counsel was so ineffective

that the representation violated the petitioner's Sixth Amendment right to counsel.

Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Aparicio v. Artuz, 269 F.3d 78, 91 (2d

---

[6]Although respondent does raise the procedural bar, a court may do so sua sponte.
Washington v. James, 996 F.2d 1442, 1448-1449 (2d Cir. 1993).

Cir. 2001).  Kent's claim that appellate counsel was ineffective is unexhausted because Kent did not raise it in a state coram nobis petition.  <u>See</u> subsection II(A) <u>supra</u>.  In any event, it is without merit.  <u>See</u> subsection II(C) <u>supra</u>.  Because Kent's claim that appellate counsel was ineffective is meritless, it may not serve as "cause" for a procedural default. <u>Aparicio</u>, 269 F.3d at 91-92.  Although Kent contends that he is innocent based upon the alleged recantation by the victims and based upon J.B.'s arrest for falsely reporting an incident <u>See</u> subsection II(F) <u>infra</u>, he has not presented any new evidence that he is "actually innocent" of the crimes for which he was convicted.  <u>See</u> <u>Schulp v. Delo</u>, 513 U.S. 298, 327 (1995).  Accordingly, the procedural default bars federal review of Kent's claim.

### 2.  Merits

Even if Kent's claim that the prosecutor engaged in misconduct was not procedurally barred, no relief is due because the claim lacks merit.  The Due Process Clause of the Fourteenth Amendment guarantees defendants the right to a fair trial.  U.S. Const. Amend. XIV, § 1.  Prosecutorial misconduct violates this due process right when the misconduct alleged is so severe and is of sufficient significance to infect the trial, resulting in the denial of the defendant's right to a fair trial.  <u>Greer v. Miller</u>, 483 U.S. 756, 765 (1987); <u>Blissett v. Lefevre</u>, 924 F.2d 434, 440 (2d. Cir. 1991); <u>Floyd v. Meachum</u>, 907 F.2d 347, 353 (2d Cir.1990).  To prevail on a claim of prosecutorial misconduct, a petitioner must show more than mere trial error. <u>Tankleff v. Senkowski</u>, 135 F.3d 235, 252 (2d Cir.1998). "It is not enough that the prosecutor's remarks were undesirable or even universally condemned." <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986). The

16

prosecutor's comments must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden, 477 U.S. at 181 (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974)).  Further, the alleged misconduct must be placed into context and the court should consider the severity of the alleged misconduct, the curative measures taken, and the likelihood of conviction absent any misconduct. Cunningham v. Bennett, No. 02-CV-4635, 2005 WL 1162475, at *7 (E.D.N.Y. May 16, 2005). The court should then determine if the petitioner has shown actual prejudice in light of the totality of the circumstances surrounding the trial court conviction.  Samuels v. Mann, 13 F.3d 522, 526-27 (2d Cir. 1993).

Here, Kent contends that the prosecutor committed misconduct by coaching the witnesses and knowingly eliciting perjured testimony from Sgt. Weber, C.B., J.B., and Jane Szary, and that the prosecutor capitalized on the perjured testimony in her closing argument. See Attach. at ¶¶ 25, 26, 27, 35, 36; Supplemental Pet. at¶ 132; Traverse at 4-5.  A conviction based on perjured testimony is analyzed under the Due Process Clause of the Fourteenth Amendment. Napue v. Illinois, 360 U.S. 264, 269 (1959); Cunningham, 2005 WL 1162475, at *8.  The petitioner has the burden of demonstrating, by a preponderance of evidence, that the witness committed perjury and, in determining whether perjury occurred, a court must "weigh all the evidence of perjury before it." See Ortega v. Duncan, 333 F.3d 102, 106 (2d Cir. 2003).

The mere showing that perjured testimony was presented at trial does not mandate habeas relief.  Ortiz v. Woods, 463 F. Supp. 2d 380, 393 (W.D.N.Y. 2006); Vail v. Walker, No. 96-CV-578, 1999 WL 34818638, at *1 (N.D.N.Y. Aug. 24, 1999).   A conviction must be set aside if "the prosecution knew, or should have known, of the perjury" and "there is

any reasonable likelihood that the false testimony could have affected the judgment of the jury." Ortiz, 463 F. Supp. 2d at 394 (quoting United States v. Agurs, 427 U.S. 97, 103 (1976)).  In cases where the prosecution had no actual or constructive knowledge of false testimony, relief is available, in extraordinary circumstances where the testimony was material and the court has a firm belief that but for the perjured testimony, the petitioner would most likely have been acquitted.  Ortega, 333 F.3d at 106; Sanders v. Sullivan, 863 F.2d 218, 225 (2d Cir. 1988).

Kent has not established that the state's witnesses committed perjury, much less that the prosecutor knew or had reason to know that the witnesses were allegedly untruthful.   Kent first claims that the prosecutor knew or should have known that counsel was appointed in the Family Court action because Child Protective Services was in contact with the district attorney.  Kent claims that in spite of that alleged knowledge, the prosecutor permitted Sgt. Weber to testify at the suppression hearing and later at trial that Kent did not ask for counsel and waived counsel.  Attach. at ¶ 27.  Kent offers no evidence that the prosecutor knew that an attorney had been assigned in the family court action and the state court found that Kent waived his right to counsel despite Kent's claims to the contrary.  H. 131-40.  The tape-recorded conversation (Attach. at Ex. C) shows at best that Weber was mistaken that Kent was at home.  However this is hardly new evidence and could have been discovered sooner, since at the suppression hearing Weber testified on cross-examination that it was possible a woman at Kent's home told him she could call Kent and have him be at the house soon (H. 27-29).  Nor does the tape shed light upon whether Kent's statement, given after he voluntarily went to the police station, was coerced.

18

Kent next contends that the prosecutor knew that C.B. and J.B. could not go to camp in July 1990 without getting physicals but that she let the girls testify falsely that they went to camp and used that testimony to discredit Kent.  Attach. at ¶¶ 35-36,  This claim is based upon Kent's conversation with an unnamed inmate and a corrections officer, who allegedly told him that children could not go to state-sponsored overnight camps without physicals (Supplemental Pet. at ¶ 132), and upon a handwritten note dated February 26, 1998 from the Seton Health Center that C.B. had a camp physical in 1989 and that there was no record of a camp physical being done on J.B. at all.  Attach. at Ex. H.  These allegations fall short of establishing either that the girls lied about attending camp or that the prosecutor had any knowledge that they lied.  The Seton Health Center letter is dated three years after the trial and Kent does not provide any credible evidence that the prosecutor had knowledge of the dates of the girls' physicals.  Moreover, Kent testified at trial that C.B. attended camp with her brother in July 1990 but that J.B. did not go to camp (T. 86-87, 90-91, 144-47).  In any event, whether the girls attended camp in July 1990 is not material to whether Kent sexually abused them.

Kent also contends that the prosecutor "deliberately clouded the truth" through her questioning of Jane Szary and that Szary fabricated her conclusion that the medical examinations of C.B. and J.B. were consistent with the allegations at the request of the prosecutor.  Attach. at ¶¶ 42-46.  Kent apparently relies upon the finding in the girls' medical records that they were virgins at the time they were examined. Attach. at 42-43, Ex. I, J.  The only rape allegation pertained to C.B. to which Szary testified was that an in-tact hymen was consistent with allegations that Kent tried unsuccessfully to penetrate C.B. but stopped when she told him he was hurting her.  T. 4/12/95, 20-27.  Szary testified that

19

the examination was normal with no signs of injury and attributed that finding to the fact

that several years passed between the abuse and the examination.  Id. at 25-27.  Szary

testified that the same was true of the allegations of sodomy.  Id. 28-32.  Accordingly, in

Szary's medical opinion, the examination results were consistent with the allegations.  Of

note is the fact that Kent's expert, Thomas Felix Dennys Oram, agreed with Szary's basic

findings and disagreed only with the conclusion that the examination findings were

consistent with the allegations.  T. 4/13/95, 35-60.  Kent has not presented any evidence

that Szary committed perjury or that the prosecutor coached her testimony or influenced

how her report was written.

Kent contends that C.B. and J.B. lied about the sexual abuse and that the

prosecutor knew it and offers as proof that the girls recanted that testimony later.  In

support of that claim, Kent attaches an affidavit signed by Alice LaPlante in which she

claims that C.B. and J.B. told her at school that they lied because their mother forced

them.  Attach. at Ex. G.  Kent also attaches an affidavit signed by the girls' brother in

which he claims that C.B. told him that Kent deserved to be in jail for not paying enough

attention to them.  Attach. at Ex. O.

In circumstances where a petitioner alleges that a witness recanted his or her trial

testimony, a petitioner must demonstrate that the recantation was reliable and that the

elimination of the perjured testimony would probably result in an acquittal in a retrial.

Ortiz, 463 F. Supp. at 395.  Recantations are viewed with "utmost suspicion."  Sanders,

863 F.2d at 225.  A court must be satisfied that the recantation could not have been

discovered sooner with the exercise of due diligence.  Ortiz, 463 F. Supp. at 395.

Here, Alice LaPlante testified on Kent's behalf at trial that she spoke to C.B. and

20

J.B. at school and that they told her they lied at their mother's direction.  T. 207-10, 222-

27.  The same information was contained in her affidavit.  The affidavit does not show that

the witnesses committed perjury nor is it evidence of a recantation.  The jury heard

LaPlante's testimony and chose to disregard it.  See Mackenzie v. Portuondo, 208 F.

Supp. 2d 302 (E.D.N.Y. 2002)(holding that a court must presume that the jury resolved

issues of credibility in favor of the prosecution).

The brother's affidavit also is not evidence that C.B. and J.B. recanted their

testimony.  Nor is it proof they committed perjury.  The state court found that the brother's

affidavit contained his conclusions "based on alleged statements of the victims that

"indicated" or "intimated" that they testified falsely at trial against the defendant." See

Docket No, 13, Ex. 3j.  The state court further noted that "[n]owhere does he [brother] say

that they "stated" anything that would directly conflict with the statements they made at the

trial of defendant."  Id.  The same is true of the brother's affidavit attached to Kent's

habeas petition.  The version of the brother's affidavit dated February 16, 2003 differs in

form, but not substantially in content, from the affidavit presented to the state court dated

February 5, 2004.  See Docket No. 13, Ex. 3g; Attach. at Ex. O.  Since the state court

determined the issue of perjury based on the brother's affidavit on the merits, the

AEDPA's deferential standard found in 28 U.S.C. § 2254(d) is triggered.  Ortiz, 463 F.

Supp. 2d at 398.  Since the state court's ruling was not contrary to or an unreasonable

application of clearly established federal law, Kent's petition on this ground should be

denied.

To the extent that Kent claims that the prosecutor bolstered the testimony of

witnesses and made improper comments during closing argument, a review of the record

shows that the prosecutor's conduct during the trial was not so severe as to deprive Kent of a fair trial.

Accordingly, the petition on these grounds should be denied.

### E.  Ineffective Assistance of Counsel

Kent contends that "although trial counsel did perform in an adequate manner," counsel was ineffective because he was uninterested in the case, he missed legal points, he did not question witnesses aggressively enough, and he did not adequately investigate the case to discover alibi witnesses.  Pet. at ¶ 12D; Attach. at ¶¶ 48-50, 59.  Kent also claims that appellate counsel was ineffective because counsel was "completely inadequate" and did not respect Kent's wishes or accept his advice.  See Pet. at ¶ 12D. Respondent contends that Kent received effective assistance of trial and appellate counsel.  See Docket No. 13, at 33-44.

A defendant arguing ineffective assistance of counsel must show that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.  Counsel's performance must have been deficient and that deficient performance must have prejudiced the defense.  Once this is shown, it cannot be said that the result of the proceeding is reliable. United States v. DeJesus, 219 F.3d 117, 121 (2d Cir. 2000) (citing Strickland v. Washington, 466 U.S. 668,  687 (1984)).  A defendant must demonstrate that counsel's errors were so serious that the defendant was deprived of a fair trial and that there was a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different.  Strickland, 466 U.S. at 686.

22

The proper measure of attorney performance is an objective standard of reasonableness in the totality of the circumstances under prevailing professional norms. Id. at 688; Purdy v. United States, 208 F.3d 41, 44 (2d Cir. 2000).  Strategic choices made after investigation of the relevant law and facts are normally not subject to challenge and the reviewing court must be "highly deferential" to counsel's performance.  Strickland, 466 U.S. at 688.  Additionally, state court findings on such matters are conclusive on the court reviewing the habeas petition if supported in the record.  28 U.S.C. § 2254(d); Summer v. Mata, 455 U.S. 591, 592 (1982).

### 1. Trial Counsel – Procedural Bar

Kent did not raise the claim that trial counsel was ineffective on direct appeal, but included this claim in his motion to vacate conviction pursuant to CPL 440.10.  See Docket No. 13 at Ex. 3f.  The trial count denied this claim on the ground that it could have been raised on direct appeal but was not and was, therefore, barred by CPL 440.10(2)(c).  See Docket No. 13, Ex. 3j.  A denial of a claim under CPL 440.10(2)(c) rests on an adequate and independent state ground, and the claim is therefore procedurally barred.  Aparicio, 269 F.3d at 91.  The claim can be reviewed if Kent demonstrates cause for the default and actual prejudice, or that the failure of the federal habeas court to review the claim would result in a fundamental miscarriage of justice because he is actually innocent.  Coleman, 501 U.S. at 748-40.

Kent argues that this claim was not raised on direct appeal because appellate counsel was ineffective.  See Attach. at ¶ 48; Traverse at 18-22.  As noted above in subsection II (D)(1), that claim is unexhausted because Kent did not raise it in a state coram nobis petition and in any event is without merit.  See subsection II(E)(3) infra. Since the claim that appellate counsel was ineffective is meritless, it cannot serve as "cause" for the procedural default.  Aparicio, 269 F.3d at 91-92.  As discussed more fully below in subsection II(F), Kent has not presented any new evidence that he is "actually innocent" of the crimes for which he was convicted.  Schulp, 513 U.S. at 327.

Therefore, the claim that trial counsel was ineffective is procedurally barred.

### 2.  Trial Counsel – Merits

24

Even if Kent's claim that trial counsel was ineffective was not procedurally barred, it is without merit.  Kent concedes that trial counsel's performance was adequate but claims that counsel was uninterested in his case and, therefore, did not adequately investigate possible defenses and potential alibi witnesses and was not aggressive enough.  A review of the record, however, indicates that Kent's trial counsel properly represented him in all respects.  Counsel made the proper objections, filed the proper motions, and vigorously cross-examined the prosecution's witnesses.

Moreover, several of Kent's claims of ineffectiveness are refuted by his own petition.  Kent contends that trial counsel failed to investigate an alibi defense and subpoena alibi witnesses.  See Attach. at ¶ 50; Traverse at 16-17.  In support of this claim, Kent attaches an unsworn handwritten statement from "Winnie" dated February 4, 2003 in which Winnie states that Kent told her that C.B. and J.B. were living with their mother's friends and would come home in August 1990, that she does not remember the children attending camp in 1990, and that Kent worked a lot.  See Attach. at Ex. R.  Kent contends that the friends were Jeff and Shirly Planty and that trial counsel knew about the Plantys but failed to contact them or subpoena them for trial.  See Traverse at 16-17.[7]  However, Kent acknowledges that the existence of the Plantys "escap[ed] my memory at the time of trial."  Attach. at ¶¶ 38-39.  Further, Kent testified at trial, consistently with C.B. and J.B., that in July 1990, he was living with C.B. and J.B. along with their younger siblings.  T. 4/13/95, 77.  Trial counsel cannot be ineffective for not subpoenaing alleged alibi witnesses whom Kent himself did not "remember" at the time of trial, especially in light of

_____

[7] There is no affidavit from the Plantys attached to the habeas petition.

Kent's testimony that C.B. and J.B. lived with him during the relevant time frame.

Kent also contends that trial counsel was ineffective because he did not uncover the alleged taped conversation between Kent and Pamela (Lennon) Razzano, which Kent alleges proves Weber lied and also proves that he intended to call his attorney before going to the police station.  See Attach. at ¶ 4.  Kent attaches an affidavit from Razzano in which she claims not to have discovered the taped telephone conversation until May 1995 - after the trial.  See Attach. at Ex. E.  Kent's claim that trial counsel should have known about this alleged taped conversation is meritless.  Equally meritless is Kent's claim that trial counsel was ineffective for not discovering, without Kent's help, that Kent did not want custody of C.B. and J.B. in 1993 when he was going through the divorce with the girls' mother, and that C.B. was upset about it.  See Attach. at ¶ 73.  The record shows that trial counsel was aware of the separation in 1993 and attempted to ask questions about the children's reaction to the separation at trial.  T. 4/13/95, 94-97.  Further, had counsel elicited testimony that Kent did not want custody of C.B. and J.B., it would likely have contradicted Kent's trial testimony that he was close to the girls, that he was their confidant, and that he was in the process of trying to adopt all of the children when he separated from their mother.  T. 129-130.  This claim is without merit.

Finally, Kent contends that trial counsel was ineffective for failing to prevent Szary, from testifying falsely.  See Attach. at ¶ 49.  The record clearly shows, however, that counsel not only rigorously cross-examined Szary (T. 33-47, 53-57), but that counsel called his own expert, who testified favorably for the defense, including testifying that he would not necessarily have believed C.B. and J.B. and would not have made a statement in the medical reports that the examination findings were consistent with the allegations.

26

T. 4/13/95, 35-66.  Further, Kent fails to demonstrate that he was prejudiced by any of the alleged ineffective assistance or that the result of the trial could not be relied upon.

Kent has not established that trial counsel's performance was constitutionally deficient.  Strickland, 466 U.S. at 687.    Therefore, the petition on this ground should be denied.

### 3.  Appellate Counsel[8]

Kent also contends that he received ineffective assistance of appellate counsel because appellate counsel did not raise on direct appeal that trial counsel was ineffective and that the prosecutor engaged in misconduct.  Kent also contends that appellate counsel was in possession of the alleged tape-recorded conversation between himself and Razzano but that counsel she refused to raise the issue on direct appeal.  Attach. at ¶¶ 48, 19, 33, Ex. E; Traverse at 18-22.

To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that (I) appellate counsel's performance fell below an objective standard of professional reasonableness, and (ii) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different -- i.e., the error caused prejudice to the petitioner.  Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Strickland, 466 U.S. at 688, 694.  When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." Mayor v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994);

---

[8]See subsection II(A) supra.

Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000).  A petitioner must show more than

counsel's failure to raise a non-frivolous argument as counsel is required to use

professional judgment when deciding to concentrate on a few key issues while eliminating

weaker arguments, and is not required to advance every argument urged by the petitioner.

Evitts v. Lucey, 469 U.S. 387, 394 (1985); Jones v. Barnes, 463 U.S. 745, 751-52 (1983);

Sellan v. Kuhlman, 261 F.3d 303, 317 (2d Cir. 2001).  Moreover, the Sixth Amendment

does not require that all colorable state law arguments be raised on direct appeal.  Sellan,

262 F.3d at 310.

Here, Kent contends that appellate counsel failed to allege that trial counsel was

ineffective and that the prosecutor engaged in misconduct on appeal.  As discussed

above, Kent's claims with regard to ineffective assistance of trial counsel and prosecutorial

misconduct are meritless and appellate counsel was not constitutionally ineffective for not

raising these arguments.  See Torres v. McGrath, 407 F. Supp. 2d 551, 562 (S.D.N.Y.

2006) ("'[f]ailure to make a meritless argument does not amount to ineffective assistance'")

(quoting United States v. Arena, 180 F.3d 380, 396 (2d Cir. 1999)).

Regarding Kent's claim that appellate counsel failed to address the alleged tape-

recorded conversation between Kent and Razzano, Kent fails to demonstrate that the

outcome of the appeal would have been different -- i.e., that his conviction would have

been overturned.  Kent himself explains that appellate counsel apparently concluded that

the conversation did not prove that Kent requested counsel or that his statement was

coerced.  Attach. at ¶ 48.  Since counsel does not have to raise every claim urged by a

petitioner on appeal, it cannot be said on this record that appellate counsel was ineffective

for not raising a claim based upon the alleged tape.  See Jones,  463 U.S. at 751-52.

28

The petition on this ground should be denied.

### F.  Newly Discovered Evidence

Kent contends that there is newly discovered evidence that bears upon his guilt of the crimes for which he was convicted.  See Pet. at ¶ 12E.  Specifically, Kent claims that J.B. was arrested for falsely reporting that she was raped in 2002.  Id.  Kent also claims that C.B. directly told the brother that the allegations she made against Kent were false and were made because he did not pay enough attention to his family and because she did not like his friends.  Id.

Habeas relief is available on the ground of newly discovered evidence only if the evidence bears on the constitutionality of the petitioner's conviction.  Townsend v. Sain, 372 U.S. 293, 317 (1963), overruled on other grounds by Keeney v. Tamayo-Reyes, 504 U.S. 1 (1992); accord Herrera v. Collins, 506 U.S. 390, 400 (1993).  Newly discovered evidence that goes only to the petitioner's guilt or innocence is not sufficient to grant habeas relief.  Herrera v. Collins, 506 U.S. at 400; Chandler v. Girdich, No. 04-CV-432, 2007 WL 1521128, at *3-4 (W.D.N.Y. Apr. 25, 2007). A federal habeas court is not "permit[ted] . . . to make its own subjective determination of guilt or innocence." Jackson v. Virginia, 443 U.S. 307, 320 n. 13 (1979).

Kent raised his claim of newly discovered evidence in state court in his motion to vacate his conviction under Section 440.10(1)(g) of the CPL 440.10(1)(g), which provides that a conviction may be vacated if:

> New evidence has been discovered since the entry of a judgment based
> upon a verdict of guilty at trial, which could not have been produced by the

29

> defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based on such ground must be made with due diligence after the discovery of such alleged new evidence.

N.Y.Crim. Proc. Law § 440.10(1)(g).  The state court considered J.B.'s conviction in 2002 for disorderly conduct, following her arrest for falsely reporting an incident, based upon a false allegation of rape that J.B. fabricated in order to get more attention from her boyfriend and it considered the brother's affidavit.  See Docket No. 13 at Ex. 3j.  The state court ruled that J.B.'s conviction took place "almost seven years after defendant was convicted of the crimes and almost twelve years after the incident underlying the defendant's convictions."  Id.  The court found that J.B.'s conviction had no direct bearing on the facts that led to Kent's conviction and that this information was, at best, impeachment material.  Id.  The court noted that, under New York law, newly discovered evidence that simply impeaches or contradicts former evidence is not sufficient to set aside Kent's conviction.  Id. (quoting People v. Sides, 242 A.D.2d 750, 757 (3d Dep't 1997).

The state court also found no evidence that C.B. and J.B. had recanted because the brother's affidavit contained the brother's conclusions without direct quotes from either victim and no direct statements that would conflict with their statements at trial.  Id.  The court also pointed out that even if both girls actually recanted, that would be an insufficient basis to vacate Kent's conviction because recantation evidence is "inherently unreliable and is insufficient alone to require setting aside a conviction."  Id. (quoting People v. Brown, 126 A.D.2d 898, 900 (3d Dep't 1987).

30

"It is appropriate for a state to insist that a petitioner seeking to overturn his conviction on the basis of new evidence demonstrate the probability that, had such 'new' evidence been received at trial, the verdict would have been more favorable to the petitioner." Young v. McGinnis, No. 98 CV 281, 2006 WL 463507, at *34 (E.D.N.Y. Feb. 24, 2006) (citing to CPL 440.10(1)(g)). Kent failed to satisfy that requirement. Kent has not explicitly alleged any independent constitutional error or that his continued incarceration would deprive him of any specific federal constitutional right.  Instead, Kent insists that the brother's affidavit and J.B.'s arrest and conviction prove he is factually innocent.  Attach. at ¶¶ 80-96, 98-107.  A petitioner's claim that his conviction is factually incorrect, or simply that he is actually innocent, does not provide a basis for habeas relief.  Herrera, 506 U.S. at 403; Chandler, 2007 WL 1521128, at *4.

Accordingly, it is recommended that Kent's claim of newly discovered evidence be denied.

31

### G. Denial of Motion to Vacate

Kent contends that the state court abused its discretion when it denied his motion to vacate his conviction without a hearing under CPL 440.10.  Attach. at ¶¶108-16; Traverse at 30-31.  Kent's claim is based upon his belief that the state court's denial of his motion was erroneous and unreasonable in light of the "facts and the evidence."  See Traverse at 30.  Claims that a state court improperly denied a post-conviction motion without a hearing is not cognizable on federal habeas review.  Ortiz, 149 F.3d at 939; Jones, 162 F. Supp. 2d at 217; Diaz, 110 F. Supp. 2d at 235.  Further, the state court's determination of Kent's unexhausted claims was not contrary to, or an unreasonable interpretation of, established federal law.  Aparicio, 269 F.3d at 93.  Therefore, the petition on this ground should be denied.

### III. Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED.**

Dated: August 16, 2007                          _David R. Homer_

United States Magistrate Judge

32